```
IN THE UNITED STATES DISTRICT COURT FOR THE
           EASTERN DISTRICT OF OKLAHOMA

DELIA G. MORENO,              )
                              )
         Plaintiff,           )
                              )
v.                            )    Case No. CIV-15-141-RAW-KEW
                              )
CAROLYN W. COLVIN, Acting     )
Commissioner of Social        )
Security Administration,      )
                              )
         Defendant.           )
```

## REPORT AND RECOMMENDATION

Plaintiff Delia G. Moreno (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be REVERSED and REMANDED for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social

Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias, 933 F.2d at 800-01.

### Claimant's Background

Claimant was born on July 3, 1964 and was 49 years old at the time of the ALJ's decision. Claimant completed her high school education with special education classes. Claimant has worked in the past as a production worker building windows on an assembly line. Claimant alleges an inability to work beginning December 1, 2011 due to limitations resulting from back, neck, and knee

problems, headaches, high blood pressure, diabetes, acid reflux, and anxiety.

## Procedural History

On February 6, 2012, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) of the Social Security Act. Claimant's application was denied initially and upon reconsideration. On July 2, 2013, an administrative hearing was conducted by Administrative Law Judge ("ALJ") Bernard Porter in McAlester, Oklahoma. The ALJ entered an unfavorable decision on September 13, 2013. The Appeals Council reversed and remanded the case on February 12, 2015. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He determined that while Claimant suffered from severe impairments, she retained the RFC to perform light work with limitations.

## Error Alleged for Review

Claimant asserts the ALJ committed error in (1) failing to find Claimant met a listing; (2) failing to recognize Claimant's

4

problems with her bilateral upper extremities as a severe impairment; (3) reaching an RFC that did not include all of Claimant's limitations; and (4) failing to properly develop the record.

**Listing Consideration**

In his decision, the ALJ determined Claimant suffered from the severe impairments of lumbar disc disease, cervical disc disease, thoracic disc disease, gastroesophageal reflux disease ("GERD"), hypertension, diabetes mellitus, adjustment disorder, anxiety disorder, and cognitive disorder. (Tr. 13). The ALJ concluded that Claimant retained the RFC to perform light work except that she must be able to alternate between sitting and standing at least every 30 minutes; she would be off task for five percent of the workday and she may miss up to one day per month due to her condition; she was able to only occasionally reach overhead and climb ramps or stairs; never climb ladders, ropes, or scaffolds or crawl; she must avoid work around unprotected heights, moving mechanical parts and she must have no concentrated exposure to dust, fumes, or gases; she must avoid environments where there are temperature extremes; and she was able to perform simple tasks and make simple decisions. (Tr. 16). After consultation with a vocational expert, the ALJ determined Claimant retained the RFC to

5

perform the representative jobs of counter clerk, rental clerk, and ticket taker, all of which the ALJ found to exist in sufficient numbers both regionally and nationally. (Tr. 19). As a result, the ALJ found Claimant was not disabled from December 1, 2011 through the date of the decision. (Tr. 20).

Claimant first contends the ALJ should have found she met a listing. At step three, Claimant bears the burden of demonstrating that her condition meets or equals all of the specified criteria of the particular listing. Sullivan v. Zebley, 493 U.S. 521, 530 (1990). Claimant specifically asserts she meets the requirements for Listing 1.04, which provides in pertinent part:

> *Disorders of the spine* (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebra fracture), resulting in compromise of a nerve root (including cauda equina) or the spinal cord. With:
>
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)
>
> * * *

The ALJ states in his decision that he "gave particular attention to Listing 1.04, Disorders of the Spine." He further found the medical evidence did not demonstrate a compromise of the

nerve root or the spinal cord with nerve root compression. He cited to an MRI of the lumbar and cervical spines which showed mild narrowing of the foramina and borderline narrowing of the central canal and disc protrusions but not nerve root compression, citing Exhibit 8F. The ALJ also recognized that Claimant was positive in straight leg raising tests but found no evidence of spinal arachnoiditis or lumbar stenosis resulting in an inability to ambulate effectively. (Tr. 13-14).

The MRI report authored by Dr. Jeffrey Watts from the September 29, 2011 testing concludes with the following impression:

> At C4/5, C5/6, and C6/7, there is mild annular disc bulging with 3 to 4 mm foraminal disc protrusions, and there is moderate narrowing of the bilateral foramina at these levels. **The exiting C6 and C7 nerves, respectively, are likely compromised to some degree, which could easily contribute to an element of radiculopathy in any of these four respective distributions.**

(Tr. 408)(emphasis added by this Court).

The evidence also demonstrates a restriction of motion and loss of strength as well as decreased sensation at the C5/6 and C6/7 distributions. (Tr. 332, 411, 416, 422). Clearly, the cervical spine could meet the requirements of Listing 1.04 from this evidence in the record. On remand, the ALJ shall re-evaluate his assessment of the applicability of Listing 1.04 to Claimant's

7

cervical spine impairment.

The evidence of the same type of nerve compromise pertaining to the lumbar spine is not as apparent in the record. Based upon her symptoms and objective testing, however, further examination of the extent of Claimant's restriction for purposes of the application of Listing 1.04 may be in order.

**Step Two - Bilateral Upper Extremities**

Claimant next contends the ALJ improperly failed to find the problems with her bilateral upper extremities to be a severe impairment at step two. Where an ALJ finds at least one "severe" impairment, a failure to designate another impairment as "severe" at step two does not constitute reversible error because, under the regulations, the agency at later steps considers the combined effect of all of the claimant's impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity. Brescia v. Astrue, 287 F. App'x 626, 628-629 (10th Cir. 2008). The failure to find that additional impairments are also severe is not cause for reversal so long as the ALJ, in determining Claimant's RFC, considers the effects "of all of the claimant's medically determinable impairments, both those he deems 'severe' and those 'not severe.'" Id. quoting Hill v. Astrue, 289 F. App'x. 289, 291-292, (10th Cir. 2008).

Moreover, the burden of showing a severe impairment is "de minimis," yet "the mere presence of a condition is not sufficient to make a step-two [severity] showing." Flaherty v. Astrue, 515 F.3d 1067, 1070-71 (10th Cir. 2007) quoting Williamson v. Barnhart, 350 F.3d 1097, 1100 (10th Cir. 2003); Soc. Sec. R. 85-28. At step two, Claimant bears the burden of showing the existence of an impairment or combination of impairments which "significantly limits [his] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c). An impairment which warrants disability benefits is one that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382c(a)(1)(D). The severity determination for an alleged impairment is based on medical evidence alone and "does not include consideration of such factors as age, education, and work experience." Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988).

In this case, the ALJ did not end the sequential evaluation at step two by finding Claimant had no severe impairments. Moreover, he considered Claimant's subjective complaints of burning and tingling in her neck, shoulders, and arms caused by her spinal problems. (Tr. 17). He did find the Claimant reported some relief.

9

It also appears that the ALJ essentially included his consideration of this condition as a part of Claimant's spinal problems, which he did find to be a severe impairment.  Since he did not deny benefits at step two based upon the lack of any severe impairments, the ALJ's failure to include these conditions does not constitute reversible error.

**RFC Assessment**

Claimant contends the ALJ should have included restrictions in her upper extremities in the RFC.  "[R]esidual functional capacity consists of those activities that a claimant can still perform on a regular and continuing basis despite his or her physical limitations." White v. Barnhart, 287 F.3d 903, 906 n. 2 (10th Cir. 2001).  A residual functional capacity assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts ... and nonmedical evidence." Soc. Sec. R. 96-8p.  The ALJ must also discuss the individual's ability to perform sustained work activities in an ordinary work setting on a "regular and continuing basis" and describe the maximum amount of work related activity the individual can perform based on evidence contained in the case record. Id. The ALJ must "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and

resolved." Id. However, there is "no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question." Chapo v. Astrue, 682 F.3d 1285, 1288 (10th Cir. 2012). The ALJ did restrict Claimant's overhead reaching in his RFC. (Tr. 16). The medical evidence simply does not support further restriction as urged by Claimant. The ALJ's RFC assessment was supported by substantial evidence.

### Duty to Develop the Record

Claimant suggests that the ALJ should have ordered additional IQ testing or other mental function testing. Claimant was evaluated by Dr. Kathleen Ward, a consultative licensed clinical psychologist, on May 25, 2012. Claimant states that there is reference to a traumatic brain injury ("TBI") in Dr. Ward's report. The first reference to a TBI, however, is a statement that Claimant denies such an injury. (Tr. 425). Dr. Ward later state Claimant successfully returned to work "after the TBI." (Tr. 427). Contrary to Claimant's statements in the briefing, at no point did Dr. Ward suggest further testing was required but, rather, she concludes at Axis I that Claimant has an adjustment disorder, NOS and references "cognitive disorder v. malingering", indicating that Claimant's reported confusion and performance problems were not reconcilable

with her return to work and her ability to find her way to the appointment on her own. (Tr. 427-28).

Generally, the burden to prove disability in a social security case is on the claimant, and to meet this burden, the claimant must furnish medical and other evidence of the existence of the disability. Branam v. Barnhart, 385 F.3d 1268, 1271 (10th Cir. 2004) citing Bowen v. Yuckert, 482 U.S. 137, 146 (1987). A social security disability hearing is nonadversarial, however, and the ALJ bears responsibility for ensuring that "an adequate record is developed during the disability hearing consistent with the issues raised." Id. quoting Henrie v. United States Dep't of Health & Human Services, 13 F.3d 359, 360-61 (10th Cir. 1993). As a result, "[a]n ALJ has the duty to develop the record by obtaining pertinent, available medical records which come to his attention during the course of the hearing." Id. quoting Carter v. Chater, 73 F.3d 1019, 1022 (10th Cir. 1996). This duty exists even when a claimant is represented by counsel. Baca v. Dept. of Health & Human Services, 5 F.3d 476, 480 (10th Cir. 1993). The court, however, is not required to act as a claimant's advocate. Henrie, 13 F.3d at 361.

The duty to develop the record extends to ordering consultative examinations and testing where required. Consultative examinations

are used to "secure needed medical evidence the file does not contain such as clinical findings, laboratory tests, a diagnosis or prognosis necessary for decision." 20 C.F.R. § 416.919a(2). Normally, a consultative examination is required if

> (1) The additional evidence needed is not contained in the records of your medical sources;
>
> (2) The evidence that may have been available from your treating or other medical sources cannot be obtained for reasons beyond your control, . . .
>
> (3) Highly technical or specialized medical evidence that we need is not available from your treating or other medical sources;
>
> (4) A conflict, inconsistency, ambiguity or insufficiency in the evidence must be resolved, and we are unable to do so by recontacting your medical source; or
>
> (5) There is an indication of a change in your condition that is likely to affect your ability to work.
>
> 20 C.F.R. § 416.909a(2)(b).

This Court does not perceive that any of the factors which might compel the ordering of a consultative examination to be present in this case. No conflict in the medical evidence exists, Claimant's condition does not require the evaluation by highly specialized experts, no change of condition has been suggested, and the need for additional evidence is not indicated. As a result, the ALJ did not err in failing to obtain a mental consultative examiner.

## Conclusion

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be **REVERSED and the matter REMANDED** for further proceedings consistent with this Order. The parties are herewith given fourteen (14) days from the date of the service of these Report and Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 11th day of August, 2016.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE